# UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF FLORIDA
### MIAMI DIVISION

RICARDO GUANIPA AND MEMBERS OF THE CLASS
[ Lead Plaintiff resides in Miami, Florida, USA]

Plaintiffs,

v.

HUGO RAFAEL CHAVEZ individually and as
President of Venezuela
c/o Miralores Palace, Caracas, Venezuela

RAMON ALONSO CARRIALES RENGIFO individually and as
Vice-President of Venezuela
c/o Miralores Palace, Caracas, Venezuela

NICOLAS MADURO MOROS individually and as
Foreign Minister of Venezuela
c/o Miralores Palace, Caracas, Venezuela

TAREK EL ASSAIMI individually and as
Interior & Justice Minister of Venezuela
c/o Miralores Palace, Caracas, Venezuela

RAMON RODRIGUEZ CHACIN individually and as
former Interior & Justice Minister of Venezuela
c/o Miralores Palace, Caracas, Venezuela

HUGO CARVAJAL BARRIOS individually and as
Director of the Military Intelligence Directorate
c/o Miralores Palace, Caracas, Venezuela

HENRY RANGEL SILVA individually and as
Director of Directorate of Intelligence and Prevention Services
c/o Miralores Palace, Caracas, Venezuela

Case No **09 - 20999**

CIV - ALTONAGA

MAGISTRATE JUDGE
BROWN



Defendants.

## CLASS ACTION COMPLAINT UNDER THE ALIEN TORT CLAIMS ACT AND OTHER CAUSES OF ACTION AGAINST HUGO CHAVEZ AND OTHER VENEZUELAN MARXIST-LENINIST GOVERNMENT OFFICIALS INDIVIDUALLY AND IN THEIR OFFICIAL CAPACITIES

## I. <u>INTRODUCTION</u>

1.     This is a class action seeking damages for assault, supporting terrorism, crimes against humanity, violations of civil and human rights, torture of decedents of Lead Plaintiff and Members of the Class, and there decedents, committed by Defendants and their agents, and also acting in concert with, aiding, abetting, facilitating, soliciting, directing, orchestrating and conspiring with the Colombian paramilitary group Revolutionary Armed Forces of Colombia (FARC), Al Qaeda and the Taliban, and other terrorist group, nation states and their collaborators in those atrocities, in violation of the Law of Nations, the laws of the United States of America and of individual states, including but not limited to the State of Florida, and the laws of the Venezuela and Columbia and the natural laws of man.

## II. <u>PARTIES</u>

2.     Lead Plaintiff Ricardo Guanipa ("Defendant Guanipa") is a Venezuelan citizen, who was granted political asylum in the United States in August of 2005 and resides in this district. At all material times, Plaintiff Guanipa was a radio-journalist in Venezuela for Radio Marti, before he was forced to flee the country due death threats, violent assaults, and intimidation  and other torts by the Defendants, acting individually and in concert, jointly and severally. Plaintiff Guanipa currently resides in Miami, Florida.  Members of the Class of Plaintiffs who were forced to flee Venezuela because of death threats, assaults, intimidation, and other threats by the Defendants shall hereinafter be referred to as the ("ASSAULT CLASS").

3.     Plaintiffs living either in the United States or abroad who were victims of the

terrorist organizations FARC and Al Qaeda, the Taliban and other terrorist organizations and nation states that were directly supported by the Defendants, shall hereinafter be referred to as the ("TERRORIST VICTIMS CLASS")

4. Defendant Hugo Rafael Chavez ("Defendant Chavez") is President of Venezuela and has served as such since May of 1998 and is an admitted and proud terrorist and Marxist-Leninist communist. He rules Venezuela with an iron fist, exercising absolute control over the government and its officials and employees. He is a dictator, masquerading as a democratically elected President. Defendant Chavez resides in Caracas, Venezuela.

5. Defendant Ramón Alonso Carrizales Rengifo ("Defendant Rengifo") is Vice-President of Venezuela and has served as such since January of 2008. Upon information and belief, Defendant Rengifo resides in Caracas, Venezuela.

6. Defendant Nicolás Maduro Moros ("Defendant Moros") is Foreign Minister of Venezuela and has served as such since August of 2006. Upon information and belief, Defendant Moros resides in Caracas, Venezuela.

7. Defendant Tarek El Assaimi ("Defendant Assaimi") is the Interior & Justice Minister of Venezuela and has served as such since January of 2009. Upon information and belief, Defendant Assaimi resides in Caracas, Venezuela.

8. Defendant Ramón Rodríguez Chacín ("Defendant Chacin") is the former Interior & Justice Minister of Venezuela where he served from 1998 through September 2008 when he was forced to resign due to demonstrable support of the terrorist organization FARC, which is involved in the illicit drug production, exportation and distribution trade, which revenues it uses to further its Marxist-Leninist

communist agenda, which is supported not only by Defendants but other terrorist groups and nation states, particularly some Arabic States in the Middle East and Communist China and Communist Cuba . Upon information and belief, Defendant Chacin resides in Caracas, Venezuela.

9.    Defendant Hugo Carvajal Barrios ("Defendant Barrios") is the Director of the Military Intelligence Directorate ("DIM") of Venezuela and has served as such since 1999. Upon information and belief, Defendant Barrios resides in Caracas, Venezuela.

10.   Defendant Henry Rangel Silva ("Defendant Silva") is the Director of Directorate of Intelligence and Prevention Services (DISIP) and has served as such since 2005, and on information and belief resides in Caracas, Venezuela.

### III. JURISDICTION AND VENUE

11.   The Court has subject matter jurisdiction over this case under the Alien Tort Claims Act (ATCA) 28 U.S.C. § 1350 and the Torture Victim Protection Act of 1991 (TVPA) 28 U.S.C. § 1350, note,§ 2(a) and 28 U.S.C. § 1331 (Federal Question Jurisdiction), and 28 U.S.C. § 1332 (diversity jurisdiction). Plaintiffs also invoke the supplemental jurisdiction of this Court with respect to claims based upon the laws of the State of Florida, the Republic of Venezuela,  Colombia and/or any other applicable jurisdiction pursuant to 28 U.S.C. § 1367. This is a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure and other applicable federal statutes and rules.

12.   The amount in controversy, both individually and collectively, exceeds One Billion U.S. Dollars.

## IV. **FACTUAL BACKGROUND**

13.    Lead Plaintiff Ricardo Guanipa is a Venezuelan citizen, currently living in Miami, Florida after being granted political asylum by the United States in August of 2005 as a result of the tortious actions of Defendants, each and every of them, jointly and severally.

14    He was a reporter for El Nacional in the early 1990s where he began to investigate and report on allegations of drug trafficking and money laundering by top government officials, including but not limited to Defendants, in Venezuela and Cuba.

15.    By the mid-nineties, Plaintiff Guanipa was employed by Radio Marti, a U.S. supported radio station that broadcasted and broadcasts to Cuba and other countries where civil liberties and personal freedoms were and continue to be perverted and prohibited by their governments. At all material times, he continued and continues to investigate government corruption, including drug trafficking and money laundering between Venezuelan, Columbian and Cuban agents, and others acting in concert with them.

16.    Beginning in February of 1999, after Defendant Chavez was, based on election fraud, elected President of Venezuela, Plaintiff Guanipa began to receive numerous death threats. Approximately two to three text messages were sent to Plaintiff Guanipa's cell phone per week with threats including the following messages:

(a)    "You are a rat. In Venezuela, we kill rats."

(b)    "You are not going to live long."

17.   In February 2004, there was a popular movement in Venezuela to recall Defendant Chavez from his position as President of Venezuela. A group of between 30-40 thousand peaceful demonstrators began protesting the decision by the National Electoral Council (CNE) to disqualify Chavez and  more than a million signatures that were collected as part of an effort to press for a referendum on President Hugo Chávez's leadership. As Plaintiff Guanipo was reporting on the protests taking place on February 27th, 2004 in Caracas, Venezuela for Radio Marti. He experienced and witnessed the following events:

(a)   30-40 thousand protesters, including women and children, were marching in the streets of Caracas peacefully demonstrating.

(b)   National Guard troops lined up in front of the march to halt the progress of the protesters and began to fire tear gas canisters and rubber bullets into the crowds.

(c)   During the confusion and chaos that ensued as a result of these actions by the National Guard, Plaintiff Guanipo experienced and witnessed people firing live ammunition from a building along the route of the march into the crowd.

(d)   The crowd began to change direction and look for an alternate route. Upon doing so, according to Plaintiff Guanipa's eyewitness observations, they were fired upon by men not wearing any uniforms. These men were supporters of Chavez and were directed by the Defendants to take the above described tortious actions.

18.   Within a few days of the initial protests and demonstrations, over four hundred people were arrested, and 1200 more were wounded in Caracas, Venezuela. There

were also numerous reports that included in the figures  perons who were and are members of the local and international press who were covering the events. Examples of assaults on the press include:

(a)    Luis Wladimir Gallardo, correspondent in Caracas of the daily El Impulso, who was injured in the face by buckshot on February 27, 2004;

(b)    Carlos Montenegro of Televén, a local cameraman, received a gunshot wound in the left leg;

(c)    Berenice Gómez of the daily Ultimas Noticias was beaten by pro-government militants.

19.    Plaintiff Guanipa recalls seeing an elderly man bleeding profusely from the face leaving an area of intense protesting in Caracas, after being shot in the face. Plaintiff did a live interview for Radio Marti with the man on the spot.

20.    After the events of February and March 2004 the death threats against Plaintiff Guanipo by Chavez' agents and the Denfendants intensified. On September 02, 2004, Plaintiff Guanipo was walking on a street in Caracas when two men approached him from behind. One of them put his arm around the Plaintiff's neck and shoved a gun into his back. The man told the Plaintiff that "You better keep quiet or we'll destroy you. This is not a game." After this incident, at the urging of Radio Marti employees in the United States, Plaintiff Guanipa ceased his reporting activities and stayed in Caracas. He was granted political asylum by the United States in August 2005 and he then moved to Miami, Florida.

21.    According to the U.S. Department of State Report on Human Rights Practices for 2003 (U.S. Dept of State released February 25, 2004: "…Internal armed conflict

continued between the Government and terrorist groups, particularly the FARC, the National Liberation Army (ELN), and the AUC. The conflict caused the deaths of between 3,000 and 4,000 civilians during the year, including combat casualties, political murders, and forced disappearances."

22. FARC is classified by the U.S. State Department as a terrorist organization, and has been classified as such since the 1970s, for engaging in terrorist activities in Columbia and elsewhere including waging a guerilla warfare campaign against government forces; using mines, car bombs and other means of explosives to kill government officials and civilians; kidnapping and ransoming government officials, soldiers, and civilians; smuggling drugs and weapons across borders into various sovereign countries; among many other terrorist activities.

23. During the weekend of March 1, 2008, a cross border raid by the Columbian army on a FARC rebel camp in Ecuador resulted in the death of FARC Commander Raul Reyes, and the confiscation of his personal laptop computer. Located on the hard drive of the laptop belonging to the deceased Commander Raul Reyes was approximately 600 gigabytes worth of data, in the form of word documents, spreadsheets, email text documents, and other files, all of which was seized by Columbian authorities according to proper international police standards and procedures. Detailed in these files was evidence of cooperation between the Venezuelan government, obviously under the direction of the Defendants, and the FARC rebel group. Examples of the information found include the following correspondences:

(a) Guerrilla warfare training: Miami Herald: In an e-mail dated Apr. 18,

2005, Iván Rios writes to Raúl Reyes that somebody he calls Tino, who has a top responsibility for handling the Popular Defense Units the armed civilian militias that Defendant Chávez created to defend his Bolivarian revolution is interested in getting his troop leaders trained in guerrilla warfare with the rebels.

(b)     Loan request: Miami Herald: The Herald also has seen an e-mail dated January 2007 in which a FARC leader named Jorge Briceño, also known as Mono Jojoy, writes to the Secretariat that he proposes to ask Defendant Chávez for a loan of $250 million, to be repaid when we take power. Wall Street Journal (WSJ): In an document dated January 2007, one top FARC commander speaks of a loan for $250 million to buy arms which the FARC will pay back once it has reached power. "Don't think of it as a loan, think of it as solidarity," says Mr. Ramón Rodríguez Chacin, the interior minister, in another document.

(c)     In another email dated early 2007, FARC commander Iván Márquez describes meetings with the Venezuelan military's intelligence chief, Gen. Hugo Carvajal, and another Venezuelan officer to talk about finances, arms and border policy. Mr. Márquez relates that the Venezuelans will provide the guerrillas some 20 very powerful bazookas, which Colombian military officials believe is a reference to rocket-propelled grenade launchers.

(d)     Arms shipments: WSJ: At the meeting with Gen. Carvajal, another Venezuelan general is described as offering the port of Maracaibo to facilitate arms shipments to the guerrillas. The general suggests piggybacking on shipments from Russia from which Venezuela itself is buying everything from Kalashnikovs to jet fighters to include some containers destined to the FARC with various arms

for the guerrillas own use.

(e)     Rockets: WSJ: One email, apparently sent by a FARC commander known as Timochenko to the guerrillas ruling body in March 2007, describes meetings with Venezuelan naval-intelligence officers who offer the FARC assistance in getting rockets. The Venezuelans also offer to help a FARC guerrilla travel to Arabic States in the Middle East to learn how to use the rockets. Colombian military analysts believe the reference is to shoulder-fired antiaircraft missiles.

(f)     Rest areas: WSJ: Another email describes a November 2007 meeting between two FARC commanders and Defendant Chávez. The commanders, Ricardo Granda and Iván Márquez, report back in the email that Defendant Chávez gave orders to create rest areas and hospital zones for the guerrillas to use on the Venezuelan side of the border.

(g)     Training in guerrilla tactics: Miami Herald: (Venezuelan Interior Minister Ramón) Rodríguez Chacín inquired about the possibility that we share our experience in guerrilla warfare, something that they call asymmetric war. They want operational tactics, explosives, Bolivarian education, jungle camps, ambushes, logistic, mobility . . . , all of it thinking about an adequate response to a U.S. invasion writes Iván Rios in the e-mail, dated Nov. 14, 2007.

24.     Interpol is an international police organization that facilitates international police cooperation and enforcement. After conducting an investigation into the handling of the electronic evidence and a forensic analysis of the hard drive, Interpol announced its findings on May 15, 2008 (see attached exhibit A) that there was no evidence that the data had been tampered with at any time while it was in police

custody.

25.    The seized FARC documents and other related evidence are currently in the
custody of the Columbian government and most likely the United States
government, where they continue to be analyzed and documented. The directly
and/or indirectly tie the Defendants to support for terrorism, assaults, deprivation
of human rights and civil liberties, crimes against humanity, violations of human
rights and other atrocities against Plaintiff and other Members of the Class. The
activities of Defendants in support of the FARC and other terrorist groups and
nation states are part of a broad effort to deny and violate human rights for anyone
who may criticize, object to, or seek to democratically remove Chavez and the
other Defendants from power, in order that they cannot pursue their Marxist-
Leninist communist agenda, which is bent on turning the Western Hemisphere, at
a minimum, into a sphere of influence for their extreme socialist policies.
Recently, following the example previously pursued by former President Jimmy
Carter, the Obama administration has sought appeasement by making diplomatic
overtures to the Defendants, and Defendants have arrogantly rejected these
overtures,  as they are bent on pursuing their Marxist-Leninist communist agenda
by terrorizing,  torturing, threatening, assaulting, killing, and generally denying
human and other rights to their people, financed in large part through the drug
trade engaged in and furthered by the Defendants, so people like  the Plaintiff and
the other Members of the Class cannot democratically report on, protest against,
and ultimately change this Marxist-Leninist regime. It therefore falls upon
Plaintiff and other Members of the Class, by and through its counsel, Freedom

Watch, to pursue their rights by using the U.S. legal and judicial system. The American government is ill equipped to deal with the matters set forth in this complaint, due to the fact that Venezuelan oil services much of the country's import needs at the present time and politicians are loathe to "rock the boat" for fear that Defendants will retaliate, particularly during the period worldwide economic "depression".

### COUNT I

### (Engaging in Terrorism and/or Providing Material Support to a Terrorist Organization – Each and Every Defendant)

26.     Lead Plaintiff and members of the Victims of Terrorism Class repeat and reallege all of the previous allegations of the complaint with the same force and effect as if fully set forth again at length.

27.     The FARC was and is a global Marxist Leninist terrorist organization, having been so designated by the U.S. State Department, as hereinabove alleged.

28.     Al Qaeda was and is a global radical Arab Islamist and anti-American terrorist organization having been so designated by the U.S. State Department, as hereinabove alleged.

29.      That heretofore and at the time of the occurrences herein, Defendants, acting indivually and in concert with  FARC and Al Qaeda and other terrorist groups and nation states were engaged in terrorism and violations of human and civil rights in violation of the law of nations and of individual countries and states in that inter alia it engaged in violent acts, or acts dangerous to human life that were intended to intimidate or coerce a civilian population, and/or to influence the policy of a government  and its people by intimidation or coercion; and/or to affect the

conduct of a states in that inter alia it engaged in violent acts, or acts dangerous to human life that were intended to intimidate or coerce a civilian population, and/or to influence the policy of a government by intimidation or coercion; and/or to affect the conduct of a government by mass destruction, assassination, kidnapping or hostage taking, and other tortious acts as defined by 31 CFR § 594.311 and Chapter 113B of Part I of Title 18 of the United States Code; engaged in criminal acts intended and/or calculated to create a state of terror in the minds of particular persons or a group of persons or the general public as defined in the League of Nations Convention (1937)  and the General Assembly Resolution 51/210 (1999) wherein such acts are strongly condemned; and/or engaged in crimes against a civilian population intended to cause death or serious bodily harm to civilians or non-combatants with the purpose of intimidating a population in violation of  UN Resolution May 17, 2005 and UN General Assembly Resolution 49/60 of December 9, 1994 adopting the Declaration of Measures to Eliminate International Terrorism and all other citations  therein condemning terrorism which are hereby incorporated by reference; and  UN General Assembly Resolution 42/159 (adopted December 7, 1987) and other international laws and jus cogens as set forth herein and elsewhere.

30. That terrorism is a violation of the law of nations.

31. That conspiring with and aiding, abetting, facilitating, soliciting and giving material aid to a terrorist organization is a violation of the law of nations.

32. That heretofore and at the time of the occurrences herein, Defendants, acting indivually and in concert with  FARC and Al Qaeda, other terrorist groups and

nation states were engaged in committing violent activities, including, but not limited to coercive death threats, murder, forced disappearances, drug trafficking, extortion and kidnapping, including but not limited to the murders of the plaintiffs' decedents and others.

33. As heretofore alleged, Defendants, directly and by and through their agents, including the FARC, made payments to the Taliban and Al Qaeda in the amount of approximately $1 million dollars and also provided material support to FARC, Al Quaeda and the Taliban, all to fund terrorism and violations of human and civil rights.

34. The Defendants directly and indirectly provided guns, ammunition, trucks and other war material to FARC, Al Quaeda, the Taliban other terrorist groups and nation states through money or actual weapons as hereinabove alleged.

35. At all times material hereto, the Defendants knew or should have known that its providing money, guns, ammunition, war material and other forms of aid to FARC, Al Qaeda, and the Taliban and other terrorist groups and nation states would facilitate, aid and abet the commission murders, forced disappearances, kidnapping and other crimes, including the murders of the Plaintiffs decedents.

36. As a result of providing financial support to FARC, AL Qaeda, the Taliban, and other terrorist groups and nation states the Defendants violated the law of nations, established United States laws, international laws, treaties and norms, including, but not limited to those sections previously set forth including but not limited to:

The Declaration on Measures to Eliminate International Terrorism and citations therein incorporated by reference adopted by the United Nations General Assembly on

December 9, 1994 (GA Res. 49/60); The Anti Terror Act, 18 U.S.CC. 113B;

The Anti-Terrorism and Effective Death Penalty Act ("AEDPA"), Pub. L. No. 104-132,

110 Stat. 1214 (1996);

The Uniting and Strengthening America by Providing Appropriate Tools Required to

Intercept and Obstruct Terrorism Act of 2001 ("USA PATRIOT Act"), Pub. L. No. 107-

56, 115 Stat. 271 (2001);

The Convention on the Prevention and Punishment of the Crime of Genocide; Art. 2,

Dec. 9, 1948, 78 U.N.T.S.;

International Convention for the Suppression of Terrorist Bombings, G.A. Res. 52-164,

1, U.N. Doc A/RES/52/164;

International Convention for the Suppression of the Financing of Terrorism, 39 I.L.M.

270 (Dec. 9, 1997); G.A. Res. 54/109, 1 UN Doc A/RES/54/109 (Dec 1, 1999) and

ratified by over 130 countries (The Financing Convention);

United Nations Charter, 59 Stat. 1031, 3 Bevans 1153 (1945);

(Universal Declaration of Human Rights, G.A. Res. 217A (iii), U.N. Doc. A/810 (1948);

International Covenant on Civil and Political Rights, G.A. Res. 2220A(xxi), 21 U.N.

Doc., GAOR Supp. (No. 16) at 52, U.N. Doc. (A/6316 (1966);

Convention Against Torture and Other Cruel, Inhuman or Degrading Treatment or

Punishment, G.A. Res. 39/46, 39 U.N. Doc., GAOR Supp. (No. 51) at 1100, U.N. doc.

A/39/51 (1984);

Declaration on the Protection of all Persons From Being Subjected to Torture and Other

Cruel, Inhuman or Degrading Treatment or Punishment, G.A. Res. 3452, 30 U.N. Doc.,

GAOR Supp. (No. 34) at 91, U.N. Doc. A/10034 (1976);

Common Article 3 of the 1949 Geneva Conventions; Articles 4 and 13 of the 1977

Geneva Protocol II;

Convention on Combating Bribery of Foreign Public Officials in International Business

Transactions, 37 I.L.M. 1 (Dec. 18, 1997);

and other jus cogens.

37.    The coercive threats and/or murders of the Victims of Terrorism Class of

Plaintiffs' decedents and/or injuries to Plaintiff(s) were a direct and proximate

result of the Defendants conspiring with and providing aid to a terrorist

organizations, and through their individual and government acts,  as hereinabove

alleged, jointly and severally.

38.    The abuses described above were premeditated, politically-motivated acts of

violence committed against noncombatant civilians for the purpose of instilling

fear, targeting political opponents, and generally terrorizing a civilian population

to further their Marxist-Leninist communist agenda.

39.    Defendants are liable to Plaintiffs in that they aided and abetted, directed,

ordered, requested, paid, were reckless in dealing with, participated in a joint

criminal enterprise with, confirmed, ratified, and/or conspired with FARC, Al

Queda, the Taliban, other terrorist groups and nation states in bringing about and

perpretrating  the acts of terrorism against Plaintiff and other Members of the

Class.

40.    The murderous and other tortious acts of terrorism and violations of human rights

and other torts against the Plaintiffs and other Members of the Class were

financed by the Defendants' illegal payments of money hereinabove alleged and

their own individual and government official acts.

41.     The murderous and other acts of terrorism and violations of human rights and other torts against the Plaintiffs and other Members of the were aided, abetted and facilitated by the illegal payments of money and other illegal actions hereinabove alleged.

42.     The murderous acts of terrorism and violations of human rights and other torts against the Plaintiffs and other Members of the and the illegal payments of money and other illegal action hereinabove alleged as well as defendants furnishing arms to FARC, Al Queda and the Taliban, and other terrorist groups and nation states. were overt acts committed in pursuance of the conspiracy hereinabove alleged.

43.     That the Defendants and their agents knowingly and substantially assisted FARC, Al Qaeda, the Taliban, and other terrorist groups and nation states and their collaborators to commit acts that violate clearly established international law norms, and (b) facilitated the commission of international law violations by providing these terrorist groups and their collaborators with the tools, instrumentalities, or services to commit those violations with actual or constructive knowledge that those tools, instrumentalities, or services would be (or only could be) used in connection with that purpose.

44.     That by reason of the wrongful conduct of the Defendants, each and every one of them, jointly and severally, including aid to a terrorist organizations and nation states as hereinabove alleged and the consequent crimes and torts committed thereby, as hereinabove alleged, Plaintiff, other Members of the class and any of their decedents suffered conscious pain, suffering and death, and the Plaintiff, and

other Members of the Class have suffered pecuniary and economic damages, loss

of support, loss of nurture care and guidance, grief, anguish, loss of society, loss

of services and other injuries, and accordingly, the Plaintiffs claim all damages

allowed by law, including compensatory and punitive damages in excess of One

Billion USD.

## COUNT II

### (Assault – Each and Every Defendant)

45.     Lead Plaintiff and Members of the Class repeat and reallege all of the previous

allegations of the complaint with the same force and effect as if fully set forth

again at length.

46.     As a direct and proximate result, Lead Plaintiff Guanipa and Members of the

Classes have suffered substantial damages including, but not limited to, physical

and emotional distress, anxiety, fear and apprehension.


WHEREFORE, Lead Plaintiff and Members of the Class demand judgment in

their favor and against the Defendants, each and every one of them, jointly and severally,

for compensatory damages, punitive damages, attorneys' fees, costs, and an amount in

excess of One Billion USD and such other relief as this Court deems just and proper.


## COUNT III

### (Intentional Infliction of Emotional Distress )
### Each and Every Defendant)

47.     Lead Plaintiff and Members of the Class repeat and reallege all of the previous

allegations of the complaint with the same force and effect as if fully set forth

again herein.

48.     The Defendants' actions, as described in the foregoing paragraphs, were
        intentional, extreme, outrageous and intolerable and created a fear of serious
        bodily injury and death.

49.     The Defendants' conduct was the sole proximate cause of the severe and
        continuing emotional distress that has been suffered by Lead Plaintiff Guanipa
        and Members of the Class.  As a direct and proximate result of the intentional,
        reckless, outrageous and intolerable conduct of the Defendants, each and every
        one of them, jointly and severally.  Lead Plaintiff and other Members of the Class
        have suffered substantial damages including, but not limited to, severe emotional
        distress, mental anguish, intense fear and anxiety, migraine headaches, back pain,
        neck pain, heart ailments, and other physical manifestations of emotional distress,
        among other ailments as they were put in fear of immediate bodily injury and
        death.

        WHEREFORE, Lead Plaintiff and Members of Class demand judgment in their
favor and against the Defendants, each and every one of them,  jointly and severally, for
compensatory damages, punitive damages, pre- and post-judgment interest, attorneys'
fees, costs and such other relief as this Court deems just and proper in an amount in
excess of One Billion USD.

## JURY DEMAND

        Plaintiff hereby demands a trial by jury of any and all issues herein triable of right
by a jury.

**FREEDOM WATCH, INC.**
3415 SW 24th Street
Miami, FL 33145
Tel: 305-447-1091
Fax: 305-447-1548

LARRY KLAYMAN, ESQ.
F.B.N.: 246220

Counsel for Lead Plaintiff and the Class

## **VERIFICATION**

I, Ricardo Guanipa, am a citizen of Venezuela and am a resident of the State of Florida. I have read the foregoing Verified Complaint and declare under penalty of perjury under the laws of the United States of America that the foregoing factual averments are true and correct to the best of my knowledge and belief.

Ricardo Guanipa

KRISTEN MARIE PONS
MY COMMISSION # DD722319
EXPIRES October 04, 2011
(407) 398-0153   FloridaNotaryService.com

**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**

*(Attachment to the Civil Cover Sheet, list of Defendants)*

HUGO RAFAEL CHAVEZ, RAMON ALONSO CARRIALES RENGIFO
NICOLAS MADURO MOROS, TAREK EL ASSAIMI, RAMON RODRIGUEZ
CHACIN, HUGO CARVAJAL BARRIOS, HENRY RANGEL SILVA

JS 44 (Rev. 12/07)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a) PLAINTIFFS

Ricardo Guanipa and Members of the Class

**(b)** County of Residence of First Listed Plaintiff   USA
(EXCEPT IN U.S. PLAINTIFF CASES)

**(c)** Attorney's (Firm Name, Address, and Telephone Number)

Freedom Watch, Inc.; Larry Klayman, Esq. 3415 SW 24th Street; Miami FL, 33145; 305-447-1091

## DEFENDANTS

See attachment

County of Residence of First Listed Defendant   Venezuela
(IN U.S. PLAINTIFF CASES ONLY)

NOTE:  IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED.

Attorneys (If Known)

*Venue: Miami*

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

- ☐ 1  U.S. Government Plaintiff
- ☒ 3  Federal Question (U.S. Government Not a Party)
- ☐ 2  U.S. Government Defendant
- ☐ 4  Diversity (Indicate Citizenship of Parties in Item III)

Date 09cv 20999 - Altonaga/Brown

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff
(For Diversity Cases Only)                         and One Box for Defendant)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury - Med. Malpractice | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal 28 USC 157 | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 365 Personal Injury - Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC 881 | | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 340 Marine | **PERSONAL PROPERTY** | ☐ 650 Airline Regs. | ☐ 830 Patent | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 345 Marine Product Liability | ☐ 370 Other Fraud | ☐ 660 Occupational Safety/Health | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 371 Truth in Lending | ☐ 690 Other | | ☐ 490 Cable/Sat TV |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 380 Other Personal Property Damage | **LABOR** | **SOCIAL SECURITY** | ☐ 810 Selective Service |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 385 Property Damage Product Liability | ☐ 710 Fair Labor Standards Act | ☐ 861 HIA (1395ff) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 195 Contract Product Liability | | | ☐ 720 Labor/Mgmt. Relations | ☐ 862 Black Lung (923) | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 196 Franchise | | | ☐ 730 Labor/Mgmt.Reporting & Disclosure Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 890 Other Statutory Actions |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 740 Railway Labor Act | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate Sentence | ☐ 790 Other Labor Litigation | ☐ 865 RSI (405(g)) | ☐ 892 Economic Stabilization Act |
| ☐ 220 Foreclosure | ☐ 442 Employment | **Habeas Corpus:** | ☐ 791 Empl. Ret. Inc. Security Act | **FEDERAL TAX SUITS** | ☐ 893 Environmental Matters |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ Accommodations | ☐ 530 General | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 894 Energy Allocation Act |
| ☐ 240 Torts to Land | ☐ 444 Welfare | ☐ 535 Death Penalty | **IMMIGRATION** | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 895 Freedom of Information Act |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 540 Mandamus & Other | ☐ 462 Naturalization Application | | ☐ 900Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | ☐ 550 Civil Rights | ☐ 463 Habeas Corpus - Alien Detainee | | ☐ 950 Constitutionality of State Statutes |
| | ☒ 440 Other Civil Rights | ☐ 555 Prison Condition | ☐ 465 Other Immigration Actions | | |

## V. ORIGIN (Place an "X" in One Box Only)

- ☒ 1 Original Proceeding
- ☐ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from another district (specify)
- ☐ 6 Multidistrict Litigation
- ☐ 7 Appeal to District Judge from Magistrate Judgment

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):
Alien Tort Claims Act (ATCA) 28 U.S.C. 1350

Brief description of cause:
Human Rights Violation, Assault, Torture, Torts

## VII. REQUESTED IN COMPLAINT:

☑ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23

**DEMAND $** $1,000,000,000.00

CHECK YES only if demanded in complaint:
**JURY DEMAND:**  ☑ Yes  ☐ No

## VIII. RELATED CASE(S) IF ANY

(See instructions):   JUDGE _____   DOCKET NUMBER _____

DATE   04/15/2009

SIGNATURE OF ATTORNEY OF RECORD

## FOR OFFICE USE ONLY

RECEIPT #  350   AMOUNT  99915   APPLYING IFP _____   JUDGE _____   MAG. JUDGE _____